UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IN RE:                                  §
                                        §          CHAPTER 11
IdentiPHI, Inc.,                        §
                                        §          CASE NO. 09-10349-CAG
                          Debtor.       §

**DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING DEBTOR TO ENTER INTO
LETTER OF INTENT, FOR THE SALE OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF CLAIMS, INTERESTS, LIENS AND ENCUMBRANCES,
(B) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT,
(C) APPROVING PROCEDURES AND NOTICE WITH RESPECT TO SALE,
(D) SCHEDULING AN AUCTION AND HEARING FOR APPROVAL OF SALE,
AND (E) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now IdentiPHI, Inc., Debtor In Possession, by and through its undersigned counsel, and hereby submits this motion (the "363/365 Motion" or the "Motion") and respectfully represents as follows:

**SUMMARY OF RELIEF REQUESTED**

1.      IdentiPHI, Inc., Debtor In Possession ("Debtor"), filed for relief under Chapter 11 on February 11, 2009.

2.      Prior to and subsequent to the petition date, Debtor and its counsel, having concluded that Debtor will not be able to reorganize and that a sale of substantially all of the Debtor's assets would be in the interest of creditors, have attempted to identify potential purchasers and the best process for proceeding with a sale. Debtor has concluded that an auction (the "Auction") of substantially all of the Debtor's assets (the "Sale Assets") pursuant to the procedures outlined herein will generate the highest and best value to the Debtor's estates.

3.     On the petition date, Debtor filed its *Application For Debtor In Possession Financing Pursuant to 11 USC §§363, 364(c) and 364(d)*, seeking authorization for the Debtor to obtain post-petition financing under from Passlogix, Inc. pursuant to §364(c) and (d) of the Bankruptcy Code, as well permission to use cash collateral.  The DIP financing is critical to Debtor's ability to continue to operate during the period in which Debtor will sell substantially all of its assets to the highest bidder under a sale process authorized and approved by the court.

## JURISDICTION

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of Debtor's Chapter 11 case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105, 363, 365 and 1146 of Title 11, United States Code, II U.S.C. §§ 101 et seq. (the "Bankruptcy Cod" as complemented by Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.     On February 11, 2009 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Debtor continues to operate its business and manage its assets as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

6.     No trustee or examiner has been appointed in this bankruptcy case. An Official Committee[1] of Unsecured Creditors has not been formed in this case. Debtor has been using cash collateral pursuant to a court-authorized Debtor In Possession financing agreement with Passlogix.

.     7.     Debtor's is in the business of selling software and hardware systems which provide security to computer systems through the use of biometric readers.

---

[1]     All references to "the Committee" are applicable only if a committee is formed.

## OVERVIEW OF PROPOSED TRANSACTION

8.      As noted above, Debtor has, both prior to the Petition Date after, sought possible partners, investors or purchasers for its business. Since the inception of the case, Debtor has continued to seek to identify all parties which may be interested in acquiring Debtor's assets.

9.      Debtor has previously contacted the parties who were believed to be potentially interested in the purchase of the Debtor's business. Although a few potential purchasers did express an interest, only one offer was received. As a consequence, Debtor believes that presenting a "stalking horse" contract to the creditors and the Court would maximize the benefits of the sales process. Debtor has obtained a letter of intent from Passlogix, the DIP lender approved by the court, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit C** (the "LOI") to purchase substantially all of the assets of the Debtor and to assume some of the executory contracts for the price of $1,300,000.00, with certain credits and adjustments as more fully set forth in the LOI.  Debtor seeks court authorization to enter into the LOI.   Debtor, by the auction process seeks to obtain higher or better offers, or validate the attached contract through the process described.

10.      As a precondition to the Auction, bidders must sign and, if they become the Successful Bidder at the Auction, be bound by the terms and conditions of a Purchase and Sale Agreement (the "Purchase and Sale Agreement") in substantially the form of **Exhibit C** attached hereto, which is the LOI with Passlogix.   The Purchase and Sale Agreement must be unconditional except as to bankruptcy court approval.   If no competing bids are provided that meet the criteria established below, Debtor seeks the approval of the LOI attached hereto as **Exhibit C.**

11.     The following is a brief summary of certain of the key provisions of the LOI submitted by Passlogix that will be required in the Purchase and Sale Agreement to be submitted by bidders:

A.     **Parties**.  The parties to the Purchase and Sale Agreement are Debtor, as "Seller" and Successful Bidder, as "Buyer".

B.     **Purchased Assets**.  Pursuant to Section 1.2 of the Purchase and Sale Agreement, the assets to be sold consist of a substantial part of the assets of Debtor:

(1)     All source code, object code, localization resource files, developer documentation, API documentation, build documentation, user documentation, implementation documentation and test scripts and routines for the software related to all products sold by the Seller (the "Products");

(2)     All computers, laptops, servers, network gear and related software utilized by the Seller to conduct its business including source code management system, developer tools, SDKs, CRM, accounting system, and web site;

(3)     All knowledge base, FAQs and support documentation for all Products;

(4)     All licenses and support agreements for any embedded, integrated or bundled third party products;

(5)     List of and agreements with, all professional services providers supplying any form of services related to the sales, support, development or testing of the Products;

(6)     All pending and granted copyrights, patents, trademarks, and any analysis and related licenses and documentation on any enforcement activity;

(7)     All support data on all support activity for all customers;

(8)     All documentation on all support or maintenance obligations that have yet to be fulfilled;

(9)     All marketing materials and related source files for all Products, including price books, website, web pages, brochures, presentations, demos, tradeshow booths, promos, packaging and advertising;

(10)     All license agreements for all customers that have purchased or are evaluating the Products;

(11)     All active and inactive maintenance and support agreements for all customer that have purchased the Products;

(12) All active and inactive licenses, reseller and distributor agreements with third parties granted rights to sell, distribute, implement and support the Products;

(13) Contact details and CRM database of all existing customers and sales opportunities currently in the Seller's pipeline, including all details on each such opportunity;

(14) To the extent not included in items (a) through (m) above, all information (whether or not protectable by patent, copyright or trade secret rights) and intellectual property rights possessed or owned by Seller, and all right, title and interest of Seller in, to and under licenses, sublicenses or like agreements providing Seller any right or concession to use any information or intellectual property, including all trade names, trademarks (including common-law trademarks), service marks, domain names, web sites, art work, packaging, plates, emblems, logos, insignia and copyrights, the corporate name "IdentiPHI, Inc." and its registrations and applications, and all goodwill associated therewith, all domestic and foreign patents and patent applications, all technology, know-how, show-how, trade secrets, manufacturing processes, formulae, drawings, designs, schematics, specifications, algorithms, systems, forms, technical manuals, data, data bases, computer programs and software, object and source code, product information and development work-in-progress and all documentary evidence of any of the foregoing (collectively, with the Acquired Assets described in subparagraphs (a) through (m) above, the "Intellectual Property Rights");

(15) Certain furniture, fixtures, machinery and equipment, leasehold improvements, supplies, spare parts, replacement parts, component parts, samples, packaging materials, vehicles, computer hardware (including maintenance parts, software and databases related thereto) and other tangible personal property of Seller, to be identified on an exhibit to the Definitive Agreement;

(16) All deposits and pre-paid expenses;

(17) All rights under the "Assumed Contracts and Leases" (as such term is defined below);

(18) All telephone numbers, web sites and domain names and URL addresses used in connection with the Acquired Business;

(19) All vendor, distributor, reseller, service provider, contractor and customer relationships;

(20) All licenses, sublicenses, permits, approvals, certifications, endorsements, qualifications, accreditations and authorizations of all governmental

entities necessary for the conduct of the Acquired Business, to the extent transferable (collectively, the "Permits");

(21)     All records and documentation (including without limitation all disks, tapes and other media-storage data and information) relating to its customers, distributors and suppliers (including without limitation all customer, distributor and supplier lists), and all other current and historic business records of Seller, except for the "Seller Records" (as such terms are defined below);

(22)     All goodwill, including without limitation Seller's goodwill associated with all vendor, distributor, service provider, contractor and customer relationships;

(23)     All other Collateral of the Purchaser under the Financing Order as hereinafter defined other than Excluded Assets as hereinafter defined;

(24)     The lease on the property located in Edmonton, Alberta, Canada; and

(25)     All accounts receivable.

C.     **Excluded Assets**.  Pursuant to Paragraph 2 of the LOI, assets of the Debtor not being sold to Buyer include:

(1)     Cash and cash equivalents (collectively, "Cash"), which shall be applied at closing to reduce the Seller's "DIP Obligations" under the Financing Order as defined in Paragraph (3)(a)(1) hereof;

(2)     Agreements, contracts and leases that are not Assumed Contracts and Leases;

(3)     Tax returns and supporting documentation related thereto, records of any kind relating to taxes, corporate franchise, record books, record books containing minutes of meetings of directors, managers, shareholders, and such other records as have to do exclusively with Seller's organization, stock capitalization or equity (collectively, the "Seller Records");

(4)     Causes of action brought pursuant to Bankruptcy Code §§ 544, 547, 548, 549, 550, 551 and 553,  as well as all claims or causes of action of any nature and brought under any legal theory against any shareholders, directors, officers or insiders of the Seller, professional malpractice claims against pre-petition professionals, and recoveries upon such causes of action;

(5)     Rights of the Seller under the "Definitive Agreement" (as such term is defined in the Passlogix LOI); and

(6)     Equity interests in any entity.

D. **Tax Liabilities**. Buyer will assume all ad valorem tax liabilities and other property taxes for Calendar year 2009 and subsequent years related to the Property.

E. **Purchase Price**. In consideration for the Acquired Assets, at the closing of the Sale (the "Closing"), Buyer would pay Seller the aggregate consideration payable to Seller pursuant to such initial competing bid which shall exceed the Purchase Price (as set forth in the LOI) by an amount equal to the "Breakup Fee" (as such term is defined in the LOI), plus the Expense Reimbursement (as such term is defined in the LOI) plus $50,000, with any subsequent bids to be in $10,000 increments

**Orders Sought**

12. Accordingly, by this Motion, Debtor seeks the entry of orders, pursuant to Sections 105, 363, 365 and 1146 of the Bankruptcy Code (as defined below) and Rule 6004 of the Federal Rules of Bankruptcy Procedure, as follows:

A. An order to be entered no later than February 27, 2009 (the "Sale Procedures Order") which shall be reasonably acceptable to Seller and Purchaser and, among other things, provide that:

1 a hearing with respect to the Sale (the "Sale Hearing") shall be scheduled to commence no later than March 27, 2009;

2 if a competing bid meeting the requirements of the immediately following subparagraph is submitted, an auction among the Purchaser and those parties having submitted competing bids which satisfy the terms of the Sale Procedures Order (the "Auction") for the sale of the Acquired Assets shall be conducted on March 27, 2009 as set forth in the Sale Procedures Order;

3 other persons shall have a right to submit a competing bid for the Acquired Assets subject to the following requirements:

(a) such competing bids shall (i) be on substantially the same terms as the Proposed Transaction, (ii) be on terms and conditions which are not substantially more burdensome to Seller than the terms of the Definitive Agreement, and (iii) not be subject to any contingencies to closing other than those applicable to Purchaser;

(b) such competing bids shall be in writing and delivered to Seller's and Purchaser's counsel not later than 3:00 pm CST on March 25, 2009;

(c) the aggregate consideration payable to Seller pursuant to such initial competing bid shall exceed the Purchase Price by an amount (the "Initial Overbid Requirement") equal to the "Breakup Fee" (as such term is defined below), plus the Expense Reimbursement (as such term is defined below) plus $50,000, with any subsequent bids to be in $10,000 increments; and

4 the Breakup Fee and Expense Reimbursement are approved;

B. An order to be entered at the conclusion of the Sale Hearing (the "Sale Order") which shall be reasonably acceptable to Seller and Purchaser and shall, among other things:

1 authorize Seller to sell and Purchaser to purchase the Acquired Assets in accordance with the terms and conditions of the Definitive Agreement and to pay Key Ovation in accordance with Paragraph 3 of the LOI;

2 provide that Purchaser's purchase of the Acquired Assets shall be free and clear of all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, easements, restrictions, constructive or resulting trusts, or charges of any kind or nature, including without limitation any restriction on the use, voting, transfer, receipt of income or other exercise of ownership (collectively, "Liens") and free and clear of all Claims and Liabilities, other than any liabilities that Purchaser, in its discretion, elects to assume, with all such Liens, Claims and Liabilities to attach to the net proceeds of the Sale in their order of priority with the same validity, force and effect which they had against the Acquired Assets, subject to the rights, claims, defenses and objections, if any, of Seller and all interested parties with respect to such Liens, Claims and Liabilities;

3 provide that all consideration of the Sale payable to the Purchaser at the Closing on account of the DIP Obligations shall be paid pursuant to and in furtherance of the Financing Order;

4 provide that Purchaser shall not be assuming and shall not be liable or responsible for any Claims and Liabilities, as successor to Seller, or otherwise;

5 enjoin and bar (the "Sale Injunction") all persons or entities, including without limitation any federal, state or local government or agency, department or instrumentality thereof, from asserting by lawsuit or otherwise any of the Liens, Claims and Liabilities against Purchaser, the Acquired Assets and the Acquired Business that such persons or entities had, have or may have against Seller, the Acquired Assets and the Acquired Business, on any basis whatsoever including without limitation under theories of successor liability or pursuant to Bankruptcy Code § 506(c);

6       provide that the Seller shall be responsible for any taxes under any state or local law imposing a stamp, transfer or similar tax in connection with the transfer of the Acquired Assets to Purchaser;

7       provide that Purchaser constitutes a good faith purchaser within the meaning of Bankruptcy Code § 363(m) and that all facets of the Sale, including the purchase of the Acquired Assets described herein, have been proposed, conducted, adequately disclosed, negotiated, and agreed to in good faith within the meaning of, and pursuant to, Bankruptcy Code § 363(m);

8       provide that the Sale Order shall not be stayed for ten (10) days after entry as permitted by Fed. R. Bankr. P. 6004(g); and

9       provide that proper, adequate, timely and sufficient notice of the Sale and the Sale Hearing has been given in accordance with the terms and conditions of the Sale Procedures Order;

C.      An order to be entered at the conclusion of the Sale Hearing in conjunction with or part of the Sale Order (the "Assumption Order") which shall be reasonably acceptable to Seller and Purchaser and, among other things, (i) provide that the Assumption Order shall not be stayed for ten (10) days after entry as permitted by Bankruptcy Rule 6006(d), and (ii) authorize Seller to assume, on or prior to the Closing Date (as such term is defined below), and on the Closing Date assign, the Assumed Contracts and Leases to Purchaser, and to reject certain executory contracts and/or unexpired leases designated by Purchaser for rejection by Seller prior to the conclusion of the Sale Hearing, in accordance with the following procedures:

1       the Assumed Contracts and Leases to be assigned to Purchaser shall be identified on an exhibit attached to the Sale Motion. Such exhibit shall set forth the amount necessary to cure existing defaults under each such Assumed Contract and Lease as estimated in good faith by Seller based on its books and records;

2       Purchaser may elect in its sole and absolute discretion to refrain from assuming any executory contract or unexpired lease previously identified as an Assumed Contract and Lease, in which case Seller shall reject such executory contracts and unexpired leases; and

3       Purchaser shall, at the Closing, (i) pay or escrow for, out of the Purchase Price as set forth in Paragraph 3(c) above, the Cure Amounts, and (ii) pursuant to Bankruptcy Code § 365(f)(2), provide such adequate assurance of future performance as is determined by order of the Bankruptcy Court to be necessary with respect to the Assumed Contracts and Leases.

**Bid Procedures and Sale Provisions**

13.     As set forth above, the Proposed Sale to Passlogix shall be subject to higher and better offers.  The Debtor is hereby authorized and directed to solicit bids for the Proposed Sale in accordance with the following procedures which will be set out in the Sale Procedures Order:

A.      <u>Notice Procedures</u>:

1      Within one business day after the date of entry of this Order, the Debtor shall cause a copy of this Order to be sent by first-class mail, postage prepaid, to all persons or entities which were served with the Scheduling Order, and in addition to the extent not included thereby, (a) any potential bidder previously identified by the Debtor, (b) any party other than Passlogix and Key Ovation that may assert a security interest in the Acquired Assets, (c) each party in interest who has filed a request for notices in the Debtor's bankruptcy case pursuant Bankruptcy Rule 2002, (d) all governmental agencies required to receive notice of proceedings under the Bankruptcy Rules, (e) the creditors listed in the creditor matrix filed with the Court and (f) all counterparties to all executory contracts and unexpired leases of the Debtor.

2      No later than 5 business days prior to the date of the Sale Hearing, the Debtor shall file a schedule of the Assumed Contracts and Leases (as such term is defined in the Letter of Intent) and shall indicate what the Debtor reasonably believes, based upon its books and records, to be the Cure Costs (as such term is defined in the Letter of Intent) applicable to each of the Assumed Contracts and Leases.

3      [Publication Notice, if any].

B.      <u>Bid Procedures</u>:

1      <u>Qualified Bidders</u>.  The Debtor and its professionals shall seek to identify and recognize persons or entities as qualified to bid on the Acquired Assets, based on, among other things, statements of interest and certain financial information demonstrating to the Debtor's satisfaction such persons or entities' financial wherewithal to consummate a purchase of the Acquired Assets (each, a "Qualified Bidder"), provided however that no such person or entity shall become a Qualified Bidder unless and until such person or entity has executed and delivered to the Debtor a confidentiality agreement on terms and conditions acceptable to the Debtor (the "Confidentiality Agreement").  The Debtor and its professionals shall notify all Qualified Bidders in writing of their designation as Qualified Bidders and their ability to participate in the bidding process.  Any person or entity interested in purchasing the Acquired Assets may seek to become a Qualified Bidder and participate in

the bidding process by notifying the Debtor (at the address set forth below) prior to the Bid Deadline (as such term is defined below) of its interest in bidding on the Acquired Assets and providing such information as may be required by the Debtor and its professionals to demonstrate such person or entity's financial wherewithal to consummate a purchase of the Acquired Assets, by submitting the Good Faith Deposit (as such term is defined below) and by executing and delivering a Confidentiality Agreement. Each Qualified Bidder will be notified in writing of its designation as a Qualified Bidder by the Debtor.

2    Due Diligence.  The Debtor will afford any potential Qualified Bidder such due diligence access or additional information as may be reasonably requested by the prospective Qualified Bidder and that, in their business judgment, the Debtor and its professionals determine to be reasonable and appropriate, subject in all respects to such potential Qualified Bidder's execution and delivery of a Confidentiality Agreement. The Debtor will coordinate all reasonable requests for information and due diligence access from Qualified Bidders, with Qualified Bidders' requests being treated as a higher priority than prospective Qualified Bidders that have not executed and delivered a Confidentiality Agreement. Unless otherwise determined by the Debtor, in its discretion after consultation with the Committee, the availability of additional due diligence to a prospective Qualified Bidder will cease from and after the Bid Deadline. Notwithstanding anything to the contrary set forth in this Order, the Debtor shall have no obligation to provide any person or entity with "source code" and/or "code base."

3    Non-Qualified Bidders.  Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process ("Non-Qualified Bidder"). A Non-Qualified Bidder will not be permitted to conduct due diligence or to make a bid for the Acquired Assets or participate in the Auction (as such term is defined below). Notwithstanding anything to the contrary set forth in this Order, the Debtor may in its discretion refuse to designate any potential bidder as a Qualified Bidder and/or to designate any potential bidder as a Non-Qualified Bidder if the Debtor in its reasonable business judgment believes that notwithstanding any Confidentiality Agreement that might be executed by such potential bidder, there is a substantial risk that said potential bidder might use access to the information to be obtained during due diligence to adversely affect the value of the Sale Assets or to gain a competitive advantage.

4    Proposed Asset Purchase Agreement.  The Debtor shall file the final form of the proposed Asset Purchase Agreement containing terms and conditions not materially different than those set forth in the Letter of Intent (the "Proposed APA"), no later than 10 business days prior to the Bid Deadline. Contemporaneous with such filing, the Debtor shall transmit by e-mail a copy of the Proposed APA in Microsoft Word format

to all Qualified Bidders and to all parties who may wish to become Qualified Bidders, for use as a template for Qualified Bids as set forth below.

5    Bid Deadline.  Bids must be submitted to be received by no later than 12:00 p.m., Central Time, on _____ __, 2009 (the "Bid Deadline") by Martinec Winn, Vickers & McElroy, P.C., 600 Congress Avenue, Suite 600, Austin, TX 76701, attn: Joseph D. Martinec, proposed attorneys for the Debtor In Possession.  The Debtor's counsel shall distribute a copy of each bid received to the Committee and to Passlogix.

C.    Bid Requirements.

1    Assets.  Qualified Bidders may bid only for the Acquired Assets in one unitary lot.

2    Form and Content of Bid.  A Qualified Bidder must submit a signed written bid using the Proposed APA as a template.  The bid shall be substantially the same as the Proposed APA, with only the "additional cash purchase price ("Additional Bid Price") to be added to the formula in the Proposed APA.  A Qualified Bidder's bid must include an Additional Bid Price of $_____ or more, in addition to the other Purchase Price contained in the Proposed APA, and Qualified Bidders' bids shall be allocated as set forth in the Letter of Intent and the Proposed APA between the Debtor and Passlogix.  Among other things, a Qualified Bidder's bid must provide that the first proceeds thereof shall be used by the Debtor to repay the DIP Obligations (as such term is defined in the Financing Order) in full.

3    Required Supporting Materials.  A Qualified Bidder shall accompany its Bid with (a) written evidence of available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Debtor may reasonably request; and (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed.

4    Required Good Faith Deposit.  By the Bid Deadline, a Qualified Bidder must deposit with the Debtor a good faith deposit in the amount of $130,000.00 (the "Good Faith Deposit").  The Good Faith Deposit must be made by certified check or wire transfer and will be held by the Debtor subject to subparagraph "E" below.

5    Qualified Bid.  Subject to the terms of subparagraph "C(vi)" below, a bid received by the Bid Deadline from a Qualified Bidder that meets the above requirements is considered a "Qualified Bid."  The Debtor and the Committee reserve the right to waive noncompliance with any one or more of these requirements and deem any otherwise non-qualifying bid to be a Qualified Bid.  A Qualified Bid will be evaluated based upon factors such as: (a) the purported amount of the Qualified Bid; (b) the fair, net

value to be provided to the Debtor's estate and creditors under the Qualified Bid; (c) the ability to close or the likelihood of closing the Proposed Sale without delay; and (d) any other factors that the Debtor and the Committee may deem relevant.

6    <u>Rejection of Bid</u>.  Notwithstanding the foregoing, the Debtor shall be entitled to reject any bid, in its discretion after consultation with the Committee, if the bid:  (1) is on terms that are materially more burdensome or conditional than the terms of Letter of Intent, (2) requires any indemnification of such Qualified Bidder, (3) is not received by the Bid Deadline, (4) includes a non-cash instrument or similar consideration, (5) requires any regulatory or other approval that would delay the closing, (6) that does not satisfy any term or condition set forth in this subparagraph "C", (7) contains any material conditions to closing; or (8) based on any other factors that the Debtor and the Committee may deem relevant and/or are in the best interest of the Debtor's estate and creditors. Any Bid rejected pursuant to this subparagraph "C(vi)" shall not be deemed to be a Qualified Bid.

D.    <u>Auction Process</u>:

1    <u>Bid Negotiations</u>.  Upon the receipt of Qualified Bids, the Debtor and/or its professionals may negotiate with one or more Qualified Bidders regarding the terms of the applicable Qualified Bids.

2    <u>Auction</u>.  If Qualified Bids are received other than the bid of Passlogix as set forth in the Letter of Intent and the Proposed APA, the Auction will commence at __:__ __.m. Central Time on _____ __, 2009.  The Auction will be conducted at the U. S. Bankruptcy Court, Western District of Texas, 903 San Jacinto Blvd., 3rd Floor, Courtroom 1, Austin, TX 78701 in the courtroom of the Honorable Craig A. Gargotta, United States Bankruptcy Judge, or in such other location as the Court may direct.

3    <u>Qualified Participants</u>.  Unless otherwise ordered by the Court for cause shown, only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate in the Auction.  Either the Court, in its discretion, or the Debtor shall conduct the Auction.

4    <u>Bidding Process and Selection of Successful Bidder</u>.  At the commencement of the Auction, the Debtor shall identify the prevailing highest and best Qualified Bid, which will either be the bid contained in the Proposed APA or must exceed the Purchase Price contained in the Proposed APA by an amount not less than the sum of the Expense Reimbursement, the Break-Up Fee (as such terms are defined in the Letter of Intent) and $50,000.  Subsequent bids shall be in increments of not less than $10,000.00 greater than that of, initially, the highest and best Qualified Bid.  During the Auction, the Debtor or the Court, in its discretion, may authorize different bid increments.  Upon completion of the Auction, the Debtor, in consultation with the Committee, shall select

the bidder (the "Successful Bidder"), if any, that has submitted the bid which, in the Debtor's reasonable judgment, represents the highest and best offer and is in the best interest of the Debtor's estate and its creditors (the "Successful Bid"). If no Qualified Bids are received other than the bid of Passlogix as set forth in the Letter of Intent and the Proposed APA, then Passlogix shall be deemed to be the Successful Bidder.

E.    Sale Hearing:

1    Except as set forth in the following sentence, a hearing with respect to the remainder of the relief sought by the Sale Motion not granted pursuant to this Order (the "Sale Hearing") will take place immediately following the conclusion of the Auction at the U. S. Bankruptcy Court, Western District of Texas, 903 San Jacinto Blvd., 3rd Floor, Courtroom 1, Austin, TX 78701 in the courtroom of the Honorable Craig A. Gargotta, United States Bankruptcy Judge. If no Qualified Bids are received other than the bid of Passlogix as set forth in the Letter of Intent and the Proposed APA, the Sale Hearing will commence in said location at __:__ __.m. Central Time on _____ __, 2009. At the Sale Hearing, the Debtor will seek the Court's entry of the Closing Court Orders (as such term is defined in the Letter of Intent) approving and authorizing the Proposed Sale to the Successful Bidder on the terms and conditions of the Successful Bid.

2    The Debtor will also seek to have the second highest bid for the Acquired Assets approved as the "Back-up Bid" in the event the Successful Bidder is unable or unwilling to close.

F.    Return of Good Faith Deposit:

1    The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any bidder whose bid was not the Successful Bid or the Back-up Bid. The Good Faith Deposit submitted by the Successful Bidder shall be applied against the payment of the Purchase Price, as defined in the Proposed APA, at the closing of the Proposed Sale to the Successful Bidder. Likewise, upon Closing, the Back-up Bidder's Good Faith Deposit will be returned unless the Successful Bidder [unjustifiably fails to the close the Proposed Sale as authorized by the Closing Court Orders] at which point the Successful Bidder's Good Faith Deposit will be forfeited to the Debtor subject to the Passlogix Lien (as such term is defined in the Financing Order) as liquidated damages and the Back-up Bidder will become the Successful Bidder.

G.    Status of Passlogix as Qualified Bidder:

1    Notwithstanding anything to the contrary set forth in any subparagraph above or elsewhere in this Order, (a) Passlogix is hereby determined to be a Qualified Bidder and Passlogix' bid for the Acquired Assets as set forth in the Letter of Intent and the Proposed APA is hereby determined to be a

Qualified Bid, and (b) Passlogix shall not be required to submit a Good Faith Deposit, provided that if Passlogix is the Successful Bidder and [unjustifiably fails to close the Proposed Sale as authorized by the Closing Court Orders] [then the principal amount of the DIP Obligations shall be deemed permanently reduced by the amount of $_____ as liquidated damages], and (c) Passlogix is hereby authorized to "credit-bid" at the Auction pursuant to Bankruptcy Code § 363(k) the amount of (i) the Break-Up Fee and (ii) the Expense Reimbursement.

14. **Breakup Fee, Reimbursement of Expenses**.        Passlogix has incurred substantial costs in providing the Letter of Intent and serving as "stalking horse bidder" and as such will have provided substantial benefit to the estate.  In such circumstances it is common practice to provide for a breakup fee and reimbursement of expenses as set forth in Paragraph 11 of the LOI to be approved:

2. "Notwithstanding the provisions of the immediately preceding paragraph, in consideration of the substantial time and expense incurred and to be incurred by Purchaser during the due diligence and negotiating process, Purchaser shall be entitled to the payment of a breakup fee in an amount equal to $50,000 (the "Breakup Fee") and reimbursement of all of Purchaser's documented, out of pocket costs and expenses, including without limitation the fees and expenses of its attorneys, consultants and accountants related to the Sale that are not authorized as Lender Expenses (as such term is defined in the Financing Order), in an amount not to exceed $100,000 (the "Expense Reimbursement"), if Seller and Purchaser enter into the Definitive Agreement and thereafter Seller closes a Sale or other disposition of the Acquired Business and the Acquired Assets to a person or entity other than Purchaser (a "Third Party Sale"), provided that (a) Purchaser was not the successful bidder at the Sale Hearing, or (b) Purchaser was the successful bidder at the Sale Hearing and Seller breached its obligations under the Definitive Agreement and/or the Closing Court Orders to deliver the Acquired Assets at the Closing of the Sale, provided however that Purchaser shall not be entitled to the Breakup Fee and Expense Reimbursement (y) if the Bankruptcy Court does not enter an order approving the Breakup Fee and Expense Reimbursement or (z) if Purchaser is in material default of the Definitive Agreement and/or the Closing Court Orders.  The Breakup Fee and Expense Reimbursement shall be a senior lien upon the first proceeds of a Third Party Sale."

### MOTION FOR AUTHORITY TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND LEASES AND TO ESTABLISH PROPOSED PROCEDURES FOR FIXING CURE AMOUNTS

15. **Relief Requested**.  The Sale order will include a listing of all contracts and leases (the "Assumed Contracts") that the Debtor proposes to assume and assign to Buyer in the Sale

Order. Through this Motion, Debtor requests that the Court grant it authority to assume and assign and Assumed Contracts and to establish procedures for fixing cure amounts. In Debtor's business judgment, the assumption and assignment of the Assumed Contracts is in the best interest of the Bankruptcy Estate.

16.     **Basis for Relief**. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(l) of the Bankruptcy Code, in turn, provides that if there has been a default on an executory contract or unexpired lease, the debtor may not assume such contract or lease unless, at the time of assumption, the debtor (a) cures, or provides adequate assurance that it will promptly cure, such default, (b) compensates, or provides adequate assurance that it will promptly compensate, the non-debtor party to the agreement for any pecuniary loss resulting from such default, and (c) provides adequate assurance of future performance under the agreement. 11 U.S.C. § 365(b)(1).

17.     The assignment of executory contracts and unexpired leases is governed by Section 365(t) of the Bankruptcy Code. which provides. in pertinent part. that:

    A.     The trustee may assign and executory contract or unexpired lease of the debtor only if –

        1     the trustee assumes such contract or lease in accordance with the provisions of this section; and
        2     adequate assurance of future performance by the assignee of such contract or lease is provided whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

18.     "[G]enerally an agreement is considered executory 'if at the time of the bankruptcy filing. the failure of either party to complete performance would constitute a material breach of the contract. thereby excusing the performance of the other party.'" *Stewart Title Guar.*

*Co. v. Old Republic Nat'l Title Ins. Co.,* 83 F.3d 735. 741 (5th Cir. 1996) (quoting *In re Murexco Petroleum. Inc.,* 15 F.3d 60, 62-63 (5th Cir. 1994)).

19.    The Debtor believes that the Assumed Contracts constitute executory contracts within the meaning of section 365 of the Bankruptcy Code because both Debtor and the Parties to the Assumed Contracts have material unperformed obligations.

20.    The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts or unexpired leases of nonresidential real property is whether the debtor's reasonable business judgment supports assumption or rejection. *See, Official comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.),* 378 F.3d 511, 524 n.5 (511l Cir. 2004); *Lifemark Hospitals, inc. v. LiIjeberg Enters (In re LiIjeberg Enters.),* 304 F.3d 410, 438 (5th Cir. 2002); *Richmond Leasing Co. v. Capital Bank. N.A.,* 762 F.2d 1303 (5th Cir. 1985) ("It is well established that 'the question [of] whether a lease should be rejected….is one of business judgment") (quoting *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul* & *Pac. R.R. Co.,* 318 U.S. 523, (1943)). Here, certain of the unexpired leases of nonresidential property constitutes the bulk of the real property assets upon which the Club is built.

21.    The Debtor has determined that the assumption and assignment of the Assumed Contracts represents an exercise of sound business judgment. Moreover, the Debtor is able to satisfy the requirements of Section 365(b) and (f) of the Bankruptcy Code with respect to the assumption and assignment of the Assumed Contracts because, pursuant to the Purchase and Sale Agreement, all amounts required to cure pre- and post-petition defaults under the Assumed Contracts will be paid from the Purchase Price and Buyer will be prepared to demonstrate at the Sale Hearing that the requirement of adequate assurance of future performance by the Buyer is

satisfied. Therefore, the assumption of the Assumed Contracts will place no financial burden on the Debtor's estate. Debtor believes that it is current with the respect to all but one of the Assumed Contracts. In addition, assumption and assignment of the Assumed Contracts will add value to the Sale Assets as a going concern. For these reasons, assumption and assignment of the Assumed Contracts is in the best interest of Debtor's Estate and should be approved. Debtor and Purchaser reserve the right to add or remove contracts from the list of Assumed Contracts, with notice to the effected counter-party prior to the hearing on approval.

22.    Pursuant to § 365(b)(1)(A) of the Bankruptcy Code, the Debtor cannot assume the Assumed Contracts unless (i) all existing defaults in respect of the Assumed Contracts are cured, or (ii) adequate assurance of a prompt cure of such defaults is provided. 11 U.S.C. § 365(b)(1)(A). In order to facilitate an orderly sale of the Assets and the prompt payment of cure amounts in accordance with Section 365(b) of the Bankruptcy Code, the Debtor requests that the Court approve procedures for fixing the amounts (the "Cure Amounts"), if any, necessary to cure defaults under the Debtor's executory contracts and unexpired leases to be assumed by Debtor and assigned to Buyer pursuant to the Purchase and Sale Agreement (previously defined herein as the "Assumed Contracts"). The Debtor is aware of certain accrued and unpaid amounts under certain of the Assumed Contracts and believe that the Cure Amounts in respect of those Assumed Contracts are as set forth on **Exhibit C** attached hereto. If no amount, or "$0.00" or "zero" is designated for an Assumed Contract on **Exhibit C**, then Debtor believes no Cure Amount is due. The Debtor requests that the Court require any non-Debtor party to an Assumed Contract who objects to the Cure Amount set forth in **Exhibit C** to file and serve1 upon: counsel for the Debtor by no later than 12:00 p.m. noon (Central Time) on the date which is 3 business days before the hearing on approval of sale, an objection to the Cure Amount and evidence of

any claim that a Cure Amount other than the designated amount is due under the Assumed Contracts. The Debtor will serve this Motion on all non-Debtor parties to the Assumed Contracts as well as a notice ("Cure Notice") advising such parties of their deadline to object and to serve evidence disputing the Cure Amounts. If a non-Debtor party to an Assumed Contract does not file and serve an objection as described above, the Debtor and Buyer shall be entitled to rely solely on the Cure Amounts as set forth on **Exhibit C**, and such non-Debtor party to an Assumed Contract shall be forever barred from claiming (or asserting as to the Buyer or the Debtor's [2]estate) a different Cure Amount, or from asserting any additional Cure Amounts with respect to any Assumed Contract. The Debtor submits that the above procedures are fair, reasonable and necessary and do not impose an undue burden on the non-Debtor parties to the Assumed Contracts. Accordingly, the Debtor respectfully submits that approval of the proposed procedures for fixing Cure Amounts is warranted and appropriate.

**BASIS FOR APPROVAL OF THE PURCHASE
AGREEMENT AND RELATED TRANSACTIONS**

A.      Sale of the Assets is Authorized Pursuant
to Section 363 of the Bankruptcy Code

23.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U. S.C. § 363(b)(1). Courts have uniformly held that approval of a proposed sale of property pursuant to Section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont 'l Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("for the debtor-in-possession or trustee to satisfy its

---

[2]    Service may be by facsimile addressed to Joseph D. Martinec, Counsel to Debtor, Facsimile No. (512) 476-0753.

fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business. ") (citing *In re Lionel Corp.,* 722 F.2d 1063, 1072 (2d Cir. 1983)); *In re Abbotts Dairies of Pa., Inc..* 788 F.2d 143 (3d Cir. 1986); *Pension Benefit Guaranty Corp. v. Braniff Airways. Inc. (In re Braniff Airways. Inc.),* 700 F.2d 935, 940 (5th Cir. 1983); *Sullivan Cent. Plaza I Ltd.. v. Bancboston Real Estate Capital Corp.,* 106 B.R. 934, 938 (N.D. Tex. 1989) (approving the *Abbots Dairies* fairness standard for the sale of assets); *In re Property Co. of Am. Joint Venture,* 110 B.R. 244, 247 n,5 (Bankr. N.D. Tex. 1990) ("a judge determining a § 363 application must expressly find that the evidence presents a good business reason to grant the application"); *In re Terrace Gardens Park Partnership,* 96 B.R. 707, 713-14 (Bankr. W.O. Tex. 1989) (recognizing the debtor-in-possession's potential necessity of selling some of its assets to "'slim down' as part of the reorganization process preliminary to a plan" and the business justification required to do so); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

24.     The Debtor believes that, for the reasons set forth herein, the Sale of the Sale Assets pursuant to the Sales Procedures represents a prudent and proper exercise of their business judgment and is supported by articulated business reasons.

B.      Sale of the Assets Free and Clear of Liens,
        Claims and Encumbrances Should be Authorized

25.     The Debtor requests authority to transfer the Sale Assets free and clear of any and all liens, claims and encumbrances, except those expressly assumed by Buyer pursuant to the

Purchase and Sale Agreement. Section 363(f) of the Bankruptcy Code permits such sales if one of the following conditions is satisfied:

a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b.    such entity consents;

c.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.    such interest is in bona fide dispute; and

e.    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26.    The Debtor anticipates that they can satisfy one or more of these requirements. In addition, the Sale Order will provide that, except to the extent paid and released at the closing, all liens, claims and encumbrances (other than those assumed by Buyer) will attach to the proceeds of the sale transaction with the same force and effect as such liens previously had on the Sale Assets. Accordingly, Debtor's submit that the transfer of the Sale Assets free and clear of any liens, claims and encumbrances (other than those assumed by Buyer) satisfies the statutory prerequisites of Section 363(f).

C.    Application of Section 1146(c) is Warranted

27.    Section 1146(c) of the Bankruptcy Code provides that" [t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of [the Bankruptcy Code], may not be taxed under any law imposing a stamp or sin1ilar tax." 11 U.S.C. § I 146(c). It is well settled that a transfer which is "necessary to consummation of a plan" is a transfer made under a plan within the meaning of Section 1146(c) of the Bankruptcy code. *See Dir. of Revenue. State of Del. v. CCA P'ship (In re*

*CCA P'ship),* 70 B.R. 696 (Bankr. D. Del.), aff'd 833 F.2d 304 (3d Cir. 1987); *see also City of N. Y. v. Jacoby-Bender Inc. (In re Jacoby-Bender, Inc.),* 758 F.2d 840, 842 (2d cir. 1985).

28.     It has been held that although the term "under a plan confirmed" is best interpreted to mean "authorized" by such plan, this is not the only plausible interpretation of that term. *See In re Hechinger Inv. Co. of Del.. Inc.,* 335 F.3d 243, 252 (3d Cir. 2003) (holding that under such a reading, "under a plan confirmed" might also mean a sale of real estate, although actually carried out under the authority of some other provision of law such as Section 363 or 365, which is later listed as part of a plan that is confirmed); *see also, City of N. Y. v. Smoss Enters. Corp. (In re Smoss Enters. Corp.),* 54 B.R. 950, 951 (E.D.N.Y. 1985) (sale occurring three months before confirmation was "under plan," and therefore tax exempt, when transfer of property was essential to confirmation of plan).

29.     Here, Debtor submits that the transactions contemplated by the proposed sale should be considered a transfer "under a plan" within the meaning of Section 1146(c) of the Bankruptcy Code. The Debtor expects to distribute all proceeds received from the sale of the Sale Assets pursuant to a plan of liquidation to be filed shortly after the closing of the transaction under the Purchase and Sale Agreement or at closing if there is no objection by creditors to the proposed disbursement. The consideration received by the Debtor under the Purchase and Sale Agreement will be used to pay secured claims then administrative claims and then a pro rat distribution to allowed unsecured claims.. Given these circumstances, the Debtor respectfully submits that the sale transaction contemplated herein is a transfer that should be deemed an exempt transfer within the meaning of Section 1146(c) of the Bankruptcy Code.

D.      A Finding of Buyer's Good Faith is Warranted

30.    Pursuant to Section 363(m) of the Bankruptcy code, a good faith purchaser is one who purchases assets for value and in good faith. The Debtor submits that as a result of the proposed sale, the sale will be negotiated in good faith and at arm's length. Accordingly, the sales procedures and a signed Purchase and Sale Agreement are proposed in good faith.

E.    Waiver of Bankruptcy Rule 6004(g)

31.    The Debtor requests that the Court direct that the Sale Order become effective immediately upon its entry, notwithstanding the automatic stay provisions set forth in Rule 6004(g) of the Bankruptcy rules, such that the stay provisions will not apply to the Sale Order.

32.    Bankruptcy rule 6004(g) provides that" order authorizing the use, sale or lease of property other than cash collateral is stayed until expiration of 10 days after entry of the order, unless the court orders otherwise." *See* Bankruptcy Rule 6004(g). The Buyer and the Debtor desire to close as soon as possible on the sale of the Sale Assets and consider time to be of the essence.

### THE SALE OF ASSETS DOES NOT CONSTITUTE
### A SUB ROSA PLAN OF REORGANIZATION

33.    The proposed sale of the Sale Assets does not constitute a <u>sub</u> <u>rosa</u> plan of reorganization as contemplated by *Pension Benefit Guar. Corp. v. Bra111ffAirways, 1JIC. (In re Braniff Airway, Inc.),* 700 F.2d 935,939-940 (5th Cir. 1983). The sale of the Sale Assets simply proposes to sell all of the Debtor's assets without altering the rights of the Debtor's creditors. The sale of the Sale Assets does not specify the terms under which a plan of reorganization is to be adopted and does not bind any parties or creditor constituencies under any future plan of reorganization proposed by the Debtor. *See In re Naron* & *Wagner, Chartered,* 88 B.R. 85, 88 (Bankr. D. Md. 1988) (stating, "the sale proposed here is not a <u>sub</u> <u>rosa</u> plan because it seeks

only to liquidate assets, and the sale will not restructure rights of creditors, as in the *Braniff case."*); *see also, E. Airlines, Inc. v. Shugrue (In re Ionosphere Clubs, Inc.),* 184 B.R. 648, 654 n.6 (S.D.N.Y. 1995) (distinguishing *Braniff).*

34.     Further, case law from other circuits has clearly established that a sale of substantially all of the assets of a debtor prior to confirmation, or even prior to filing, of a plan of reorganization, is permissible. *See. In re Ionosphere,* 184 B.R. at 653 ("[C]ourts consistently have acknowledged that assets of an estate can be sold prior to the confirmation, or even filing of a plan. "); *see also. In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1992) (proceeds of a sale placed in escrow pending distribution through a plan); *In re Naron & Wagner,* 88 B.R. at 88 ("[A] 363 sale] may even be made, as here, prior to filing a plan of reorganization."); *In re WHET. Inc.,* 12 B.R. 743, 750 (Bankr. D. Mass. 1981) ("[T]he case law again is clear that there is nothing objectionable about a sale of all of the assets outside of a chapter 11 plan... A trustee may, in appropriate circumstances, first liquidate the assets of a debtor and then propose a plan for distributing the proceeds to creditors."). Here, after the sale of the Sale Assets, the proceeds from the sale shall remain with the Debtor. The Debtor contemplates that shortly after consummation of the sale, the Debtor will file a liquidating Chapter 11 plan and/or proceed to expeditiously close the estate. Accordingly, the Debtor submits that the sale of the Sale Assets does not constitute a *sub rosa* plan of reorganization.

## CONCLUSION

35.     The Debtor believes that the relief requested herein will maximize the value of the Sale Assets and facilitate a sale process that best accomplishes, under the circumstances, the Debtor's goal of insuring that the highest and best offer is obtained for the Sale Assets. Accordingly, based upon the foregoing, the Debtor respectfully submits that approval of the sale

of the Assets pursuant to Section 363(f) of the Bankruptcy Code and in accordance with the Purchase and Sale Agreement is in the best interest of Debtor, its creditors and its estate.

WHEREFORE, Debtor's respectfully request that the Court enter the Auction Procedures Order and the Sale Order, substantially in the forms attached hereto as **Exhibits A and B** respectively, and grant such other relief as the court may deem just and proper.

Respectfully submitted,

MARTINEC, WINN, VICKERS & MCELROY, P.C.
600 Congress Avenue, Suite 500
Austin, TX 78701
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com


By:   /s/ Joseph D. Martinec
       Joseph D. Martinec
       State Bar No. 13137500
       ATTORNEYS FOR DEBTOR-IN-POSSESSION


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion* has been served upon the creditors and parties in interest listed on the attached matrix and on the following persons by first class mail, postage prepaid, on the 13th day of February, 2009.

IdentiPHI, Inc.
13809 Research Blvd., Ste. 275
Austin, TX 78750

Joshua I. Divack
Hahn & Hessen LLP
488 Madison Avenue, 14th Floor
New York, New York 10022

Lynn Butler
Brown McCarroll, L.L.P.,
111 Congress Avenue, Suite 1400
Austin, Texas 78701-4043

Rick Akin and Molly Mitchell
Akin & Almanza
2301 S. Capital of Texas Hwy, Building H
Austin, Texas 78746

U. S. Trustee
903 San Jacinto #230
Austin, TX 78701

/s/ Joseph D. Martinec
Joseph D. Martinec

IN RE: IdentiPHI, Inc.
CH. 11 NO. 09-10349-CAG
FILED: 2/11/09          JDM/bw

Matrix – Service List (Amended 2/11/2009)

IdentiPHI, Inc.
13809 Research Blvd., Ste. 275
Austin, TX 78750

U.S. Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

Securities and Exchange Commission
Burnett Plaza, Ste. 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102

**Top 20 Unsecured Creditors**

Utimaco
10 Lincoln Rd., Ste. 102
Foxboro, MA 02035

Piper US LLP
P.O. Box 64029
Baltimore, MD 21264-4029

Precise Biometrics
8300 Boone Blvd., Ste. 500
Vienna, VA 22182

Kiphart, Richard
222 West Adams Street
Chicago, IL 60606

AvidCard
6242 Ferris Square
San Diego, CA 92121

TX Systems Inc.
6242 Ferris Square
San Diego, CA 92121

Dell Marketing L.P.
P.O. Box 676044
Dallas, TX 75267-6044

Oberthur Technologies of America Corp
523 James Hance Court
Exton, PA 19341

UPEK
PO. Box 49056
San Jose, CA 95161-9056

Axalto
3836 Paysphere Circle
Chicago, IL 60603

KPMG
P.O. Box 120001
Dallas, TX 75312-0771

Intercede
St. Mary's Road Lutterworth
Leicestershire LE17 4PS
UNITED KINGDOM

PMB Helin Donvan LLP
5918 W. Courtyard Dr., Ste. 400
Austin, TX 78730

Hagen, Kurth Perman & Co., PS
601 Union Street, Ste. 2700
Seattle, WA 98101

Duff & Phelps
2397 Paysphere Circle
Chicago, IL 60674

Voxus
1517 Fawcett Ave., Ste. 300
Tacoma, WA 98402

Image Sales, Inc.
1559 Third Avenue
Walnut Creek, CA 94597

Guardian Realty
6000 Executive Blvd., Ste. 400
North Bethesda, MD 20822-3847

RSA Conference
P.O. Box 845570
Boston, MA 02284-5570

Integrations et Services
20, Rue Albert Remy
28250 Senonches
FRANCE